O

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLUTIONS FOR UTILITIES, INC., a California corporation,<br>CALIFORNIANS FOR RENEWABLE ENERGY, INC., a California Non-Profit Corporation,<br>MICHAEL E. BOYD, and<br>ROBERT SARVEY,<br><br>      Plaintiffs,<br><br>   v.<br><br>CALIFORNIA PUBLIC UTILITIES COMMISSION, an Independent California State Agency,<br>SOUTHERN CALIFORNIA EDISON CO., a California Corporation,<br>MARYBEL BATJER,<br>MARTHA GUZMAN ACEVES,<br>CLIFFORD RECHTSCHAFFEN,<br>GENEVIEVE SHIROMA, and<br>DARCIE L. HOUCK, in their official and individual capacities as current Public Utilities Commission of California,<br><br>      Defendants. | Case No. 2:11-cv-04975-JWH-JCG<br><br>**MEMORANDUM OPINION AND ORDER (1) GRANTING MOTION OF DEFENDANTS CALIFORNIA PUBLIC UTILITIES COMMISSION AND COMMISSIONERS TO DISMISS SEVENTH AMENDED COMPLAINT [ECF No. 316]; and (2) DENYING PLAINTIFFS' RENEWED MOTION FOR LEAVE TO FILE EIGHTH AMENDED AND THIRD SUPPLEMENTAL COMPLAINT [ECF No. 322]** |

This case approaches its thirteenth year of existence. Since its origin in 2011, it has proceeded through summary judgment, two appeals to the Ninth Circuit, multiple rounds of amended pleadings, numerous motions to dismiss, myriad *ex parte* applications, and several motions for reconsideration.[1] Many of the parties have come and gone: two of the original Plaintiffs—Solutions for Utilities, Inc. ("SFUI") and, more recently, Californians for Renewable Energy, Inc. ("CARE")—plus one of the original defendants—Southern California Edison Co.—have been dismissed.[2] Defendants Martha Guzman Aceves, Marybel Batjer, and Clifford Rechtschaffen are also no longer current Commissioners of the California Public Utilities Commission ("CPUC").[3]

Before the Court are two motions. The first is the motion of Defendants CPUC and the current Commissioners of the CPUC in their official capacities (collectively, "Defendants") to dismiss the Seventh Amended Complaint of Plaintiffs Michael E. Boyd and Robert Sarvey.[4] The second is the resubmitted motion of Boyd and Sarvey for leave to file an eighth amended and third supplemental complaint.[5] The Court finds these matters appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15.

---

[1] *See, e.g.*, *Sols. for Utilities, Inc. v. California Pub. Utilities Comm'n*, 2011 WL 13152588, at *11 (C.D. Cal. Dec. 13, 2011), on reconsideration in part, 2012 WL 12919356 (C.D. Cal. Feb. 13, 2012), and order amended and superseded on reconsideration, 2012 WL 12919409 (C.D. Cal. Feb. 13, 2012), *aff'd* in part, *rev'd* in part, 596 F. App'x 571 (9th Cir. 2015) (affirming in part Defendants' motion to dismiss); *Sols. for Utilities, Inc. v. California Pub. Utilities Comm'n*, 2016 WL 7613906, at *15 (C.D. Cal. Dec. 28, 2016) (granting Defendants' motion for summary judgment in full) ("*Solutions I*").

[2] *See Solutions I*, 2016 WL 7613906, at *2 n.1 (noting that SFUI and Southern California Edison had been dismissed); *Sols. for Utilities, Inc. v. California Pub. Utilities Comm'n*, 2022 WL 3575308, at *6 (C.D. Cal. July 20, 2022) ("*Solutions IV*") (dismissing CARE from the case).

[3] *See* California Public Utilities Commission https://www.cpuc.ca.gov/about-cpuc/commissioners/former-commissioners (last visited March 5, 2023).

[4] Mot. of CPUC and Commissioners to Dismiss Seventh Am. Compl. or, in the Alterative, to Strike Portions Thereof (the "Motion to Dismiss") [ECF No. 316].

[5] Pls.' Resubmitted Notice of Mot. and Mot. for Leave to File [Proposed] Eighth Am. and Third Suppl. Compl. [Fed. R. Civ. P. 60(b)]; Supporting Decls. of Meir J. Westreich and Michael Boyd (the "Renewed Motion for Leave") [ECF No. 322].

After considering the papers[6] filed in support and in opposition,[7] the Court orders that the Motion to Dismiss is **GRANTED** and that the Renewed Motion for Leave is **DENIED**, for the reasons set forth herein.

### I.  BACKGROUND

In 2019, the Ninth Circuit affirmed this Court's grant of summary judgment in favor of Defendants, except for one narrow question on remand.  *See Californians for Renewable Energy v. California Pub. Utilities Comm'n*, 922 F.3d 929, 938 (9th Cir. 2019) ("*Californians*").  That question concerns how to calculate "avoided cost" for utilities sourcing renewable energy from qualified generation facilities ("QFs") when taking California's Renewable Portfolio Standards ("RPS") into account—and, therefore, what price those QFs should receive for their electricity.  18 C.F.R. § 292.304(d); *see also* 16 U.S.C. § 796(18)(B).

As they allege in their most recent pleading, Boyd and Sarvey own and operate solar generating facilities.[8]  They believe that the CPUC has shirked its obligations under the Public Utility Regulatory Policies Act ("PURPA") and the attendant regulations of the Federal Energy Regulatory Commission ("FERC").  Specifically, they complain that the CPUC's programs and policies allowed investor-owned utilities, like non-party Pacific

---

[6]     After the Court took these matters under submission, Boyd and Sarvey sought to "re-open" the two submitted motions in light of "new events" that "should be considered now by judicial notice."  *See* Application to Reopen Defs.' Motion to Dismiss Pls.' Seventh Amended Complaint; Application to Reopen Pls.' Resubmitted Motion to File Eighth Amended Complaint and Third Supplemental Complaint; and Request for Judicial Notice of Pls.' New FERC Petition Proceedings and Briefing Schedule (the "Application to Reopen") [ECF No. 328] 3:27-4:1.  L.R. 7-12 provides in pertinent part:  "The Court may decline to consider any memorandum or other document not filed within the deadline set by order or local rule."  Pursuant to that Local Rule, and in the absence of good cause or prior permission, the Court exercises its discretion to decline to consider Boyd and Sarvey's late-filed application.  The relief that Boyd and Sarvey seek in their Application to Reopen is **DENIED**.

[7]     The Court considered the documents of record in this action, including the following papers:  (1) Seventh Am. Compl. (the "Seventh Amended Complaint") [ECF No. 298]; (2) Motion to Dismiss (including its attachments); (3) Opp'n to the Motion to Dismiss (the "Opposition") [ECF No. 319]; (4) Renewed Motion for Leave; (5) Defs.' Reply to Pl.'s Opposition (the "Reply") [ECF No. 323]; (6) Defs.' Opp'n to Pls.' Renewed Motion for Leave (the "Opposition to Motion for Leave") [ECF No. 324]; and (7) Mem. of P. & A. in Supp. of Pls.' Renewed Motion for Leave (the "Reply for Motion for Leave") [ECF No. 326].

[8]     Seventh Amended Complaint ¶ 36k.

Gas & Electric ("PG&E"), to underpay them for the renewable electricity that they produced.[9]

Since the initial complaint was filed, many versions of and variations on that theory (and related claims) have been heard and dismissed.[10] Prior to the Ninth Circuit remand, Boyd, Sarvey, and CARE (which was still a party at that time)[11] filed a fifth amended and first supplemental complaint.[12] That pleading was then succeeded by a sixth amended and second supplemental complaint.[13] Problematically, the Sixth Amended Complaint did not adequately state a claim for relief on the narrow issue on remand, among other deficiencies. *See Sols. For Utilities, Inc. v. California Pub. Utilities Comm'n*, 2022 WL 1741128, at *7 (C.D. Cal. Mar. 9, 2022) ("*Solutions II*") (granting Defendants' motion to dismiss the Sixth Amended Complaint, in part with leave to amend). After filing several more motions, Boyd and Sarvey eventually filed their Seventh Amended Complaint in April 2022.[14] *See Solutions IV*, 2022 WL 3575308, at *3 (summarizing the procedural history following the dismissal of the Sixth Amended Complaint). Boyd and Sarvey assert two claims for relief: one asking the Court to compel CPUC to enforce PURPA (with a prayer for monetary damages nestled therein) and a second, derivative claim for declaratory, injunctive, or equitable relief related thereto.[15]

The CPUC moved to dismiss those claims on July 22.[16] While that motion was being briefed, Boyd and Sarvey filed a Renewed Motion for Leave to file their eighth amended and third supplemental complaint.[17] That Renewed Motion for Leave seeks reconsideration of the Court's July 20 order in which it denied CARE, Boyd, and Sarvey leave to file a supplemental pleading. *See Solutions IV*, 2022 WL 3575308, at *6 (finding that the factors set forth in *Foman v. Davis*, 371 U.S. 178, 182 (1962), counseled against

---

[9] *See, e.g.*, *id*. at ¶ 42g; *see also id*. at ¶ 43 (alleging that the CPUC has "surrendered" regulatory authority to investor-owned utilities).

[10] Compl. [ECF No. 1] (filed June 10, 2011).

[11] From time to time in this order, the Court will refer to Boyd, Sarvey, and CARE collectively as "Plaintiffs," as those three parties together filed many of the more recent pleadings and motions, and CARE was dismissed less than a year ago—on July 20, 2022.

[12] Fifth Am. Compl. (the "Fifth Amended Complaint") [ECF No. 185].

[13] Sixth Am. Compl. (the "Sixth Amended Complaint") [ECF No. 267].

[14] Hereinafter, all dates are in 2022 unless otherwise noted.

[15] Seventh Amended Complaint ¶¶ 52-76.

[16] *See generally* Motion to Dismiss.

[17] *See generally* Renewed Motion for Leave.

granting leave to file a supplemental pleading under Rule 15(d) of the Federal Rules of Civil Procedure).  Both motions are fully briefed.

## II.  MOTION TO DISMISS THE SEVENTH AMENDED COMPLAINT

Defendants seek the dismissal of the Seventh Amended Complaint on three grounds:  (1) Boyd and Sarvey's pleading fails to state a claim; (2) Boyd and Sarvey lack of Article III standing; and (3) Boyd and Sarvey have failed to comply with this Court's orders.  The Court concludes that each ground provides an independent reason to **GRANT** the Motion and to **DISMISS** the Seventh Amended Complaint **without leave to amend**.  As such, Defendants' request to strike portions of the Seventh Amended Complaint, which they present in the alternative, is **DENIED as moot**.

A.  **Failure to State a Claim**

1.  **Legal Standard**

A claim should be dismissed under Rule 12(b)(6) when the plaintiff fails to assert a "cognizable legal theory" or the complaint contains "[in]sufficient facts . . . to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To survive a motion to dismiss, the complaint must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The claim must be pleaded with "sufficient factual matter . . . to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and that rises "above the speculative level," *Twombly*, 550 U.S. at 555.

Additionally, Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also Horosny v. Burlington Coat Factory, Inc.*, 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015).  For the allegations in a complaint "to be entitled to the presumption of truth," they "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).  "[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

### 2. Discussion

Despite the length and prolixity of the Seventh Amended Complaint, much of it is filler. For instance, Boyd and Sarvey spill considerable ink summarizing various aspects of PURPA's regulatory regime,[18] recapitulating the question regarding avoided costs and Renewable Portfolio Standards,[19] and insinuating that the CPUC colludes with investor-owned utilities as result of (or as an example of) politically incestuous relationships.[20] That pleading also rehashes allegations that have since become immaterial; for example, it dedicates several paragraphs to a description of CARE—a party that has been dismissed.[21]

The rest of the Seventh Amended Complaint recites conclusions of law; *e.g.*, that utility companies "do not comply with pricing and tariff terms as mandated by PURPA and its FERC implementing regulations"[22] and that there are no "PURPA compliant options within California for small power producing facilities, like Plaintiffs."[23] Even at its most specific, the Seventh Amended Complaint offers more conclusions than factual allegations. For instance, it alleges that the CPUC "fails to compel the utilities to provide a program which includes in its pricing of avoided capacity costs for small QF's [*sic*]—under 1 megawatt production capacity—who have a demonstrated ability to offer energy of sufficient reliability and with sufficient legally enforceable guarantees of deliverability to permit the purchasing electric utility to forgo capital investments."[24]

In short, the Seventh Amended Complaint reads like a broad, but often turgid, critique of how small-scale renewable energy suppliers were insufficiently compensated in California in and before 2011.[25]

---

[18] Seventh Amended Complaint ¶¶ 6-15.

[19] *Id.* at ¶¶ 16-32.

[20] *Id.* at ¶¶ 43-51. The Court declines to transform allegations of collusion into a claim for relief, since Boyd and Sarvey neither assert those allegations as a claim nor invoke any supporting law, statute, or legal doctrine. *See* Fed. R. Civ. P. 7(b)(1) (requiring any motion to "state with particularity the grounds for seeking the order" and to "state the relief sought").

[21] *See, e.g.*, Seventh Amended Complaint ¶¶ 4b, 52, & 53.

[22] *Id.* at ¶ 60d.

[23] *Id.* at ¶ 60e.

[24] *Id.* at ¶ 37; *see also id.* at ¶¶ 38, 38a., & 39.

[25] While the Seventh Amended Complaint never identifies the timeframe, the Court construes it to pertain only to policies or programs that existed prior to 2011. Otherwise, the Seventh Amended Complaint would directly contravene the Court's orders denying Boyd and Sarvey's motion to file a supplemental pleading. *See* Fed. R. Civ. P. 15(d).

But the Court is not the Capitol. The policy arguments that Boyd and Sarvey make in their Seventh Amended Complaint are inapt and unhelpful. A pleading's allegations must be factual and specific, and those details are missing here. At most, the Seventh Amended Complaint avers that Boyd and Sarvey produce solar energy, that PG&E does not pay Boyd and Sarvey as much as they would like, and that Boyd and Sarvey blame the CPUC for that state of affairs.[26] The Court finds those allegations too imprecise to state a claim—at least, not without relitigating the many aspects of the case that have already been decided. *See, e.g.*, *Californians*, 922 F.3d at 936–42.

The Court previously concluded that Boyd and Sarvey had not stated a claim with respect to the narrow question on remand because they failed to "allege facts with sufficient particularity that utilities are fulfilling their California RPS obligations through those utilities' use of **Plaintiffs'** energy." *Solutions II*, 2022 WL 1741128, at *7 (emphasis in original). Now they assert in a conclusory fashion that "Plaintiffs'—CARE, Boyd and Sarvey—respective net surplus energy supplied under the PUC approved NEM [*i.e.*, Net Energy Metering] Program has at relevant timees [*sic*] been included by their respective utilities' total calculated annual renewable energy generation to meet their annual state-mandated RPS standard*."[27] Then they repeat themselves in the very next paragraph: "Plaintiffs'—CARE, Boyd and Sarvey—respective net surplus energy supplied under the PUC approved NEM Program has been included by their respective utilities' total calculated annual renewable energy generation to meet their annual state-mandated RPS standard."[28]

Repeating a conclusory allegation does not make it plausible. Notwithstanding Boyd and Sarvey's proclamation that they "addressed" the Court's "instruction" by inserting that language into their pleading,[29] they offer no other attendant factual allegations to satisfy the pleading requirements of *Iqbal* and *Twombly*. For instance, the Seventh Amended Complaint contains no references to an interconnection agreement with any utility, no figures regarding annual kilowatt-hours or megawatt-hours produced, and no information concerning how much of that electricity was net surplusage.[30] Boyd

---

[26]  Seventh Amended Complaint ¶¶ 55-59.

[27]  *Id*. at ¶ 36h. The asterisk may be a typo, as it does not refer to anything.

[28]  *Id*. at ¶ 36j.

[29]  Opposition 5:7-12.

[30]  At one point, the pleading asserts that CARE—not Boyd and Sarvey—"***intended and sought*** to interconnect and supply energy," but not that CARE did so. *See* Seventh Amended Complaint ¶ 40. That allegation is potentially damning, since the Ninth Circuit explained that the NEM program would not need to afford avoided capacity costs if a QF did not produce more than it consumed, as that would not allow utilities to forego spending on capacity elsewhere. *See Californians*, 922 F.3d at 939.

and Sarvey do not articulate the price per kilowatt-hour that they believe they should be paid, compared to what they received from PG&E or other unspecified utilities. Boyd and Sarvey also barely provide Defendants with notice of which policies or programs they believe are no longer PURPA compliant; they mention the Net Metering Program, but they neglect to identify the version with which they take umbrage.[31]

Furthermore, Defendants point out that Boyd and Sarvey do not make sufficient allegations plausibly to show that their energy resources were *certified* by the California Energy Commission ("CEC") as RPS-eligible.[32] It is one thing, Defendants argue, for solar to be the kind of energy that is generally eligible to satisfy a utility's RPS obligations; it is another thing for a solar provider to be RPS-certified as such, so that a utility could then claim the resulting renewable energy credits to satisfy its RPS obligations.[33] That certification is handled not by the CPUC, but by the CEC. *See* Cal. Pub. Util. Code § 399.25(a) (delegating certification of renewable energy resources to the CEC); *see also* Cal. Pub. Util. Code § 399.12(h)(1) (noting that renewable energy credits are "issued through the accounting system established by the Energy Commission").

While the Court does not mean to imply that any of the preceding information is either strictly necessary or entirely sufficient for the purpose of surviving a motion to dismiss under Rule 12(b)(6), those details would, at a minimum, begin to move Boyd and Sarvey's allegations toward the realm of plausible. *See Iqbal*, 556 U.S. at 678.

Boyd and Sarvey's Opposition does not salvage their Seventh Amended Complaint's pleading deficiencies. For the most part, the Opposition rehashes much of the extraneous material.[34] Boyd submits a 170-page declaration with the Opposition, which, on first blush, may address Defendants' argument regarding the specific issue of

---

[31] *See, e.g.*, Seventh Amended Complaint ¶¶ 35, 36, 36a, 36e, 36g, 36h, & 36j. The Court assumes that Boyd and Sarvey refer to NEM 1.0, since any reference to NEM 2.0 would need to be contained in a supplemental pleading because that policy came into existence well after Boyd and Sarvey initiated this lawsuit. But it should not fall on the Court—or a defendant—to deduce what act, decision, program, or policy that the plaintiff means to indict. *See generally* Fed. R. Civ. P. 8. The Seventh Amended Complaint also obliquely refers to the CHP and Re-MAT programs in one sentence, although it does not clearly explain if those programs are relevant or why. *See* Seventh Amended Complaint ¶ 33. Since the Ninth Circuit previously found those "bare-bones" allegations insufficient to state a claim, the Court will do the same here. *Californians*, 922 F.32d at 940.

[32] Motion to Dismiss 16:21-28.

[33] *Compare* Seventh Amended Complaint ¶ 36k (asserting that "Boyd and Sarvey have at all relevant times met RPS-eligibility requirements for QF's") *with* Motion to Dismiss 19:17-19 (noting the distinction between being eligible for certification and actually being certified).

[34] *Compare* Seventh Amended Complaint *with* Opposition.

CEC certification.[35]  But that declaration cannot rescue the Seventh Amended Complaint.  "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  The information contained in Boyd's declaration and the exhibits attached thereto—concerning the CEC and certification—appears *nowhere* in the Seventh Amended Complaint.  An opposition brief is not the mechanism to bolster allegations that should have appeared in the pleading.  *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (observing that district courts ordinarily "look only at the face of the complaint to decide a motion to dismiss").  In short, Boyd and Sarvey's pleading is too light on the facts and other key details to state a claim pertinent to the narrow issue on remand.  They fail to state a claim under Rule 12(b)(6).

### 3. Leave to Amend

The question then becomes whether the Court should grant leave to amend.  *See* Fed. R. Civ. P. 15(a).  The Ninth Circuit instructs courts to consider five factors in connection with the leave-to-amend inquiry under Rule 15(a):  (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) the futility of amendment; and (5) whether the plaintiff has previously amended his or her complaint.  *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).

Here, those factors weigh against granting leave to amend.  Boyd and Sarvey concede that the Seventh Amended Complaint is "inartfully plead [*sic*]," notwithstanding the fact that they have now amended their complaint *seven* times.[36]  Boyd and Sarvey have pondered this case for more than a decade; they have had about three years to mull over the narrow question on remand; and they have already enjoyed the benefit of leave to amend on that narrow question.  Yet Boyd and Sarvey still skimp on the factual allegations necessary to comply with the strictures of *Iqbal* and *Twombly*.  Boyd and Sarvey's consistent pattern of vacuous pleading suggests futility and counsels against affording further leave to amend.  As the Court previously expressed, while dismissing the Sixth Amended Complaint:

> During the hearing, Plaintiffs' counsel represented that Plaintiffs could make this allegation if given an opportunity to amend.  In theory, such an allegation could cure both the Article III standing issue and the Rule 12(b)(6) deficiency.  But the Court is cognizant of the longevity of this litigation and the numerous opportunities already afforded to Plaintiffs to move this case

---

[35]   *See* Decl. of Michael Boyd in Opp'n to the Motion to Dismiss [ECF No. 319-1].

[36]   Opposition 25:2.

> out of the pleading stage. Such delay comes at a cost to the CPUC. Balancing the equities, the Court will afford Plaintiffs one final opportunity to amend their pleading to correct its deficiencies

*Solutions II*, 2022 WL 1741128, at *8. That final opportunity has been spent. The Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES** the Seventh Amended Complaint **without leave to amend**.

**B.     Article III Standing**

In the alternative, Defendants move to dismiss under Rule 12(b)(1) for lack of Article III standing. That Motion is also **GRANTED**.

    **1.     Legal Standard**

A defendant may invoke Rule 12(b)(1) when the plaintiff lacks standing to bring the particular lawsuit. Because federal courts are courts of limited jurisdiction, the burden of establishing subject matter jurisdiction—including standing—rests upon the party asserting jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Furthermore, in every federal case, the basis for federal jurisdiction must appear affirmatively from the record. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).

The lack of Article III standing compels the Court to dismiss the action for lack of subject matter jurisdiction. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). To demonstrate standing, a plaintiff (1) must have suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). Where, as here, the case has returned to the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element. *Id.* To establish an injury in fact, the plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992). The injury must also have a causal connection to the misconduct, rather than result from the action of a third party not before the Court. *See id.* Finally, it must be "likely"—as opposed to merely "speculative"—that the injury will be "redressed by a favorable decision." *Id.* (internal quotations and citations omitted).

## 2. Discussion

Defendants argue that Boyd and Sarvey fail to plead allegations that would satisfy the three-part test for Article III standing.[37] Defendants are correct.

As previously discussed, *see supra* Part II.A.2, the Seventh Amended Complaint does not allege sufficient facts to show that Boyd and Sarvey's energy would have been qualified to satisfy any utility company's RPS obligations (eligible, maybe—but certified, no). Without those allegations, among the others discussed, neither Boyd nor Sarvey has suffered an injury that gives either of them cognizable Article III standing to challenge the CPUC's programs within the narrow confines of the Ninth Circuit's remand.[38]

Moreover, the Court concludes that Boyd and Sarvey have not satisfied their burden to allege sufficient facts to show that their injury is traceable to the conduct of Defendants. For instance, in the Seventh Amended Complaint, Boyd and Sarvey repeatedly focus their ire on utilities. For example, Boyd and Sarvey assert that the CPUC failed "to compel the **utilities** to provide a program which includes in its pricing of avoided capacity costs for small QF's—under 1 megawatt production capacity."[39] Boyd and Sarvey also complain that PG&E offers "less than full avoided cost for only the 'surplus' above their power production."[40] While not dispositive, the very fact that PG&E and other unnamed investor-owned utilities play such a key role in the injury impedes Boyd and Sarvey's ability to satisfy the requirement that the injury not be the result of non-parties.[41] As a result, the Court is skeptical that Boyd and Sarvey have satisfied their burden. *See Spokeo*, 578 U.S. at 338 (noting that the "plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements").

Finally, the Court doubts that any relief would redress Boyd and Sarvey's injury, assuming that they pleaded it properly. The temporal implications of the procedural posture are problematic: before the Court is the Seventh Amended Complaint, **not** a supplemental pleading. The Court did not grant Boyd and Sarvey leave to file a

---

[37]    Motion to Dismiss 18:3-21:9.

[38]    While the issue is not raised in the briefs, the fact that the Boyd and Sarvey have statutory standing does not necessarily translate into having Article III standing, as their statutory standing arose in large part from having exhausted their administrative remedies and obtaining certifications from FERC. *See Solutions II*, 2022 WL 1741128, at *5 (discussing 16 U.S.C. § 824a-3(h)(2)(B)); *see also Solutions I*, 2016 WL 7613906, at *2 (noting that the "CARE Plaintiffs had fulfilled PURPA's requirement to exhaust administrative remedies").

[39]    Seventh Amended Complaint ¶ 37 (emphasis added).

[40]    *Id*. at ¶ 42g.

[41]    *See id*. at ¶ 40 (explicitly noting that PG&E is not a party to the action). The Court also previously dismissed any "as applied" claims. *See Solutions II*, 2022 WL 1741128, at *6.

supplemental pleading.  *See Sols. For Utilities, Inc. v. California Pub. Utilities Comm'n*, 2016 WL 7654679, at *3 (C.D. Cal. Mar. 31, 2016) (denying Plaintiffs' motion to file a fourth amended and first supplemental complaint); *Solutions IV*, 2022 WL 3575308, at *6 (denying the motion to file an eighth amended and third supplemental complaint).[42]  The implication is that any claim—and therefore any relief—must be tied to policies or programs that date back to 2011 or earlier, some of which may or may not still be in force.  Indeed, Boyd and Sarvey's counsel represented to the Court during the October 2021 hearing that the CPUC's policies kept changing.[43]  An effort to enjoin the CPUC from enforcing a program that no longer exists is the definition of mootness.

While Boyd and Sarvey cling to the words of the Ninth Circuit—that the narrow question on remand is be determined "in the first instance," *Californians*, 922 F.3d at 938—that instruction does not grant Boyd and Sarvey free rein to ignore the Federal Rules of Civil Procedure or to pick new fights.[44]  As this Court has repeatedly explained, claims or allegations arising from transactions, events, or occurrences that have arisen since the filing of the initial complaint must be set forth in a ***supplemental*** pleading, if at all.  *See Keith v. Volpe*, 858 F.2d 467, 471 (9th Cir. 1988).  But supplemental pleadings are not automatic; plaintiffs are not entitled to file them as of right.  *See* Fed. R. Civ. P. 15(d) (requiring a motion and court order).

In sum, Boyd and Sarvey lack Article III standing because they have not sufficiently pleaded injury-in-fact.  Additionally, Boyd and Sarvey have not affirmatively satisfied their burden to show that their injury is traceable to the actions of Defendants.  Lastly, the Court remains skeptical that a court order would be anything other than

---

[42]  The Court never granted Plaintiffs leave to file a second supplemental complaint; Plaintiffs merely captioned their fifth amended complaint as such.  Had Plaintiffs properly filed a motion pursuant to Rule 15(d), this entire saga of pleading issues may have been avoided.  Mr. Westreich argues in his declaration, which is appended to the Renewed Motion for Leave, that the parties stipulated to a supplemental pleading.  *See* Suppl. Decl. of Meir J. Westreich Re Fed. R. Civ. P. 60(b)(1) [Excusable Neglect] in Supp. of the Renewed Motion for Leave (the "Westreich Declaration") [ECF No. 322-1] ¶ 39.  But therein lies the issue: Rule 15(d) does not allow for parties to stipulate (without court approval) for a plaintiff to file a supplemental pleading, whereas the text of Rule 15(a) does.  *Compare* Fed. R. Civ. P. 15(a)(2) *with* Fed. R. Civ. P. 15(d).

[43]  That fact may explain why some of Seventh Amended Complaint's vagueness could be intentional, fitting into a pattern of ignoble motives.  *See, e.g.*, *id*. at ¶ 61 (alleging that "Plaintiffs are informed and believe, and based thereon allege, that CPUC Defendants have generally failed to perform regulatory functions").

[44]  "Although amendment of pleadings following remand may be permitted, such amendment cannot be inconsistent with the appellate court's mandate."  *Matter of Beverly Hills Bancorp*, 752 F.2d 1334, 1337 (9th Cir. 1984).  "On remand, a trial court cannot consider 'issues decided explicitly or by necessary implication.'"  *Id*. (quoting *Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982)).

advisory. Accordingly, the Court **DISMISSES** the Seventh Amended Complaint on account of Boyd and Sarvey's lack of standing.

### C. Rule 41(b) Involuntary Dismissal

In their Motion to Dismiss, Defendants also ask the Court to dismiss the Seventh Amended Complaint for Boyd and Sarvey's failure to obey the Court's prior orders. Defendants' argument is persuasive; this issue provides an independent reason for the Court to dismiss the Seventh Amended Complaint.

#### 1. Legal Standard

"If the plaintiff fails . . . to comply with . . . a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). "In determining whether to dismiss a case for failure to comply with a court order the district court must weigh five factors including: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992), *as amended* (May 22, 1992) (internal quotations and citation omitted). "Although it is preferred, it is not required that the district court make explicit findings in order to show that it has considered these factors." *Id.* at 1261.

#### 2. Discussion

Defendants meticulously chronicle the various ways that Boyd and Sarvey (and their counsel) have violated the Court's orders.[45] At a high level, it appears that Boyd and Sarvey wish to return to square one, relitigating issues and claims that have already been decided. For example, they reassert claims on behalf of CARE, a dismissed party.[46] They attempt to relitigate issues that the Ninth Circuit already affirmed.[47] They ask, again, for monetary damages—even when they later backpedal to say that they are not.[48] Whether deliberate or not, Boyd and Sarvey seem incapable of following the Court's clear

---

[45]  *See* Motion to Dismiss 9:4-14:5; Reply 7:1-9:6.

[46]  *See, e.g.*, Seventh Amended Complaint ¶¶ 4, 4a, 4b, 36b-36e, & 52-59.

[47]  *See, e.g.*, *id.* at ¶ 33 (asserting identical language about the Re-MAT and CHP Programs that the Ninth Circuit already disregarded); *id.* at ¶¶ 61 & 62 (asserting that the CPUC failed to issue any PURPA-compliant programs or tariffs, despite the Ninth Circuit's holding to the contrary).

[48]  *Compare Solutions II*, 2022 WL 1741128, at *7 (dismissing "[a]ll claims for monetary relief . . . with prejudice") *with* Seventh Amended Complaint ¶¶ 67-70 *and* Third Joint Scheduling Conference and Rule 26(f) Report [ECF No. 325] 4:14.

instructions, which, *inter alia*, afforded them leave to amend "only as it relate[d] to their implementation claim within the scope of the Ninth Circuit's remand." *Solutions II*, 2022 WL 1741128, at *8. The Court subsequently clarified those instructions several times and even gave Boyd and Sarvey extra time to amend their pleading. *See Sols. For Utilities, Inc. v. California Pub. Utilities Comm'n*, 2022 WL 1741126, at *2 (C.D. Cal. Mar. 29, 2022) ("*Solutions III*"); *Sols. For Utilities Inc. v. California Pub. Utilities Comm'n*, 2022 WL 3575307, at *1 (C.D. Cal. July 5, 2022); *Solutions IV*, 2022 WL 3575308, at *3. Yet the Seventh Amended Complaint continues to resurface issues and allegations that have been already decided.

Evaluating the *Frederik* factors, the Court concludes that it would be justified in dismissing the Seventh Amended Complaint under Rule 41(b), even if Boyd and Sarvey **had** managed to state a claim or to demonstrate Article III standing.

The first two *Frederik* factors favor dismissal. The Federal Rules of Civil Procedure impose an obligation on both the Court and the parties "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Nothing is speedy about a 12-year lawsuit. Relitigating issues— contrary to the Court's direct orders—both contravenes the public's interest in speedy litigation and further burdens the Court's already backlogged docket. *See Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (holding that the public's interest in expeditious resolution of litigation always favors dismissal); *Minghong Inv., Inc. v. Felix Chac Chuo*, 2022 WL 2189365, at *5 (C.D. Cal. Mar. 9, 2022) (noting the extreme congestion in the Central District of California).

The third factor also heavily favors dismissal. The CPUC continues to expend resources to defend itself on issues that are firmly in the rear-view mirror. Indeed, the fact that Defendants dedicated so much of their briefs to that issue is telling.[49] Looking the other way as Boyd and Sarvey flout the Court's clear instructions here, therefore, would prejudice the CPUC by putting it on an endless treadmill of litigation. *Cf. Thomas v. Spaulding*, 2021 WL 3516474, at *5 (D. Mass. Aug. 10, 2021) (declining to afford a plaintiff leave to file a supplemental pleading for analogous reasons).

The fourth factor concerns deciding cases on the merits. While that factor would normally counsel against involuntarily dismissing the case, *see Hernandez v. City of El Monte*, 138 F.3d 393, 401 (9th Cir. 1998), this concern barely registers because the case has been decided on the merits already, save for one hanging chad. *See Californians*, 922

---

[49]   *See generally* Motion to Dismiss; Reply.

F.3d at942 (affirming the award of summary judgment in "all other respects"). On balance, then, the Court finds this factor to be neutral.

Finally, the fifth factor regarding less drastic alternatives also weighs in favor of dismissal. The Court twice issued instructions to Boyd and Sarvey and warned them of the consequences of noncompliance. *Compare Solutions II*, 2022 WL 1741128, at *8 *with Solutions III*, 2022 WL 1741126, at *2. The consequence would be to strike any amended or supplemental pleading that contains allegations relating to claims that have been dismissed with prejudice. Striking the pleading, in this instance, would have the same effect as dismissing the Seventh Amended Complaint, since Boyd and Sarvey did not successfully file a supplemental pleading. Because the Court already provided that warning to Boyd and Sarvey, the Court has satisfied "the consideration of alternatives requirement." *Ferdik*, 963 F.2d at 1262 (internal quotations omitted); *see also Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986) (noting that a "district court need not exhaust every sanction short of dismissal before finally dismissing a case"); *Simon v. State of California*, 2022 WL 2987185, at *3 (C.D. Cal. July 28, 2022) (explaining that "[l]ess drastic alternatives to dismissal include warning a party that dismissal could result from failure to obey a court order") (citing *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 132 n.1 (9th Cir. 1987)). Therefore, the fifth factor also weighs in favor of dismissal.

In conclusion, the Court need not rest its decision to dismiss the Seventh Amended Complaint on the failure of Boyd, Sarvey, and their counsel to comply with the Court's orders. But their actions nonetheless supply an independent basis for doing so.

### III. MOTION FOR RECONSIDERATION

Boyd and Sarvey move the Court to reconsider its prior order denying their motion for leave to file an eighth amended and third supplemental complaint. *See Solutions IV*, 2022 WL 3575308, at *6. They wish to add allegations meant to cure jurisdictional defects and raise entirely new issues that have arisen since the Fifth Amended Complaint.[50] The Court already provided its reasoning why it will not afford Boyd and Sarvey leave to amend pursuant to Rule 15(a), *see supra* Part II.A.2., so the Court will treat this Renewed Motion for Leave as seeking leave to file a supplemental pleading pursuant to Rule 15(d). After careful review, the Court **DENIES** the Renewed Motion for Leave for both procedural and substantive reasons.

---

50  *See* Renewed Motion for Leave 6:4-17.

## A. Legal Standard

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).

"Reconsideration is not, however, to be used to ask the court to rethink what it has already thought." *Howze v. Orozco*, 2020 WL 6927604, at *4 (E.D. Cal. Nov. 20, 2020) (citing *United States v. Rezzonico*, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998)).  The Ninth Circuit has "cautioned against the use of provisions of Rule 60(b) to circumvent the strong public interest in [the] timeliness and finality" of judgments." *Phelps v. Alameida*, 569 F.3d 1120, 1135 (9th Cir. 2009) (quoting *Flores v. Arizona*, 516 F.3d 1140, 1163 (9th Cir. 2008)).  A moving party must demonstrate that "extraordinary circumstances" exist justify the relief.  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993).  Ultimately, the decision to vacate a prior ruling rests in the Court's discretion. *See Barber v. Hawaii*, 42 F.3d 1185, 1198 (9th Cir. 1994).

## B. Discussion

Boyd and Sarvey justify their renewed request for leave to file a supplemental pleading by pointing the finger at their attorney, Mr. Westreich, who allegedly made mistakes by "virtue of excusable neglect."[51]  But the Motion neither identifies that neglect nor demonstrates why it is excusable.[52]  The brief attached to the motion is of little help.  It focuses more on an argument that the CPUC continues to defy the Ninth Circuit's holding—a surprising claim, given that the Ninth Circuit overwhelmingly found in favor of the CPUC—than on explaining the supposed excusable neglect.[53]  Most of the relevant discussion of excusable neglect is contained in an entirely separate declaration from counsel.[54]

In that declaration, Mr. Westreich argues that the Court erroneously denied his clients' request for leave because of "the failures of Plaintiffs' counsel to adequately refute" Defendants' submissions and the Court's "*sua sponte* assertions" "with a record that was available to do so."[55]  Mr. Westreich testifies that he "mistakenly assumed that the content of the filings by which the 2020 Scheduling Order was vacated . . . [h]ad made

---

[51]    Renewed Motion for Leave 4:3-5.

[52]    *See generally id.*

[53]    *Compare* Mem. of P. & A. in Supp. of the Renewed Motion for Leave [ECF No. 322-2] 4:1-9:27 *with id.* at 10:2-22.

[54]    *See generally* Westreich Declaration.

[55]    *Id.* at ¶ 3.

sufficiently clear that the factors specified in *Fohman* [*sic*] . . . had little or no application because . . . the genesis of the new pleading and case management delay was from Defendants, not Plaintiffs who had abandoned any further notion of filing any pleading motion in order to move the case along."[56]

### 1. Local Rules and Admissibility

Defendants object to the Westreich Declaration.[57] Their objection is **SUSTAINED**. "Declarations shall contain only factual, evidentiary matter and shall conform as far as possible to the requirements of F. R. Civ. P. 56(c)(4)." L.R. 7-7. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

While Mr. Westreich undoubtedly has personal knowledge of this case's long procedural history, his declaration blends factual evidentiary matter with legal argument, the latter of which more appropriately belongs in the brief.[58] Hewing closely to the text of L.R. 7-7, the Court, in its discretion, excludes Mr. Westreich's declaration, leaving the Motion unsupported by any admissible evidence. *See* L.R. 83-7 (stating that the "violation of or failure to conform to any of these Local Rules may subject the offending party or counsel" to "such other sanctions as the Court may deem appropriate under the circumstances"); *see also* L.R. 7-4 (permitting the Court to "decline to consider a motion unless it meets the requirements of L.R. 7-3 through 7-8," which, *a fortiori*, implies that exclusion is permissible as a lesser sanction). Without a declaration "setting forth . . . the new or different facts or circumstances claimed to warrant relief," the Renewed Motion for Leave must be **DENIED** on procedural grounds. L.R. 7-17.

### 2. Merits of Excusable Neglect

Even if the Court were to admit Mr. Westreich's declaration, his argument for excusable neglect does not merit relief from the Court's prior order under Rule 60(b)(1).

Excusable neglect "covers negligence on the part of counsel." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223 (9th Cir. 2000). The question of whether conduct constitutes "excusable neglect" under Rule 60(b)(1) "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Brandt v.*

---

[56]     *Id.* at ¶ 4.

[57]     Opposition to Motion for Leave 3:9-24.

[58]     *See, e.g.*, Westreich Declaration ¶¶ 3-6, 29-31, 33, 37-39, 41-43, 45, 48-51, 53-56, 65, 67-69, & 73.

*Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011) (internal citations and quotations omitted).[59]

In recounting his view of the post-remand procedural history of the case, Mr. Westreich essentially accuses Defendants of leading him down the primrose path, coaxing him to vacate the trial dates and to file the Sixth Amended Complaint.[60] Mr. Westreich regrets agreeing to that course of action and failing to file a supplemental pleading earlier.[61] He also regrets his decision to withhold e-mail correspondence (to and from Defendants' counsel) from the Court, which he believes would have strengthened his argument during the briefing on Plaintiffs' prior motion for leave to file a supplemental pleading.[62]

Even taking that declaration into account, three reasons compel this Court to deny the Renewed Motion for Leave. First, it is unclear why any of the information contained in Mr. Westreich's declaration would have caused the Court to reach a different outcome under the *Foman* factors. Aside from several conclusory statements, such a counterfactual analysis is conspicuously absent from Boyd and Sarvey's briefs.[63]

It appears that Mr. Westreich is trying to argue that he and his clients are not solely responsible for the delays or length of the litigation.[64] While that may be so, it does not affect the delay or prejudice that a supplemental pleading would create now. Merely because Defendants suggested that the parties vacate a scheduling order does not mean that Defendants are responsible for the delay that yet ***another*** pleading would inflict, *see Solutions IV*, 2022 WL 3575308, at *4, nor does it change the Court's calculus regarding the prejudicial impact of reopening discovery, *see id*. at *5.

Second, even if the Court was convinced that the factors of undue delay and prejudice were a wash or that somehow they weighed in favor of granting leave to file a

---

[59] When a party fails to meet a deadline, the Ninth Circuit uses a four-factor test to determine if that failure constitutes excusable neglect or inadvertence under Rule 60(b)(1): "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bank of Am., N.A. v. Los Prados Cmty. Ass'n*, 2021 WL 5984985, at *1 (9th Cir. Dec. 16, 2021). Since missed deadlines are not at issue here, that particular test is inapposite.

[60] Westreich Declaration ¶¶ 13-36; *see also* Reply for Motion for Leave 2:11-5:3 & 6:1-15.

[61] Westreich Declaration ¶ 12.

[62] *Id*. at ¶ 72 (referring to "Exhibit 50," an unverified summary of alleged email correspondence between Mr. Westreich and Defendants' counsel).

[63] *See, e.g.*, Renewed Motion for Leave 10:15-21; Reply for Motion for Leave 6:9-15.

[64] *Compare* Reply for Motion for Leave 6:10-14 *with Solutions IV*, 2022 WL 3575308, at *3-*6.

supplemental pleading, the other three *Foman* factors still counsel in favor of denying leave to file a supplemental pleading. Therefore, the result would have been the same. *See id*. at *6 (finding that all five *Foman* factors weighed in favor of denying leave to file a Rule 15(d) supplemental pleading).

Third, Mr. Westreich's excuses essentially boil down to an admission of negligence. However, an attorney's errors, lapses of judgment, and unsuccessful litigation strategies generally do not qualify his or her client for relief under Rule 60(b)(1). *See Allmerica Fin. Life Ins. & Annuity Co. v. Llewellyn*, 139 F.3d 664, 666 (9th Cir. 1997) (holding that "attorney error is insufficient grounds for relief under both Rule 60(b)(1)"). "As a general rule, parties are bound by the actions of their lawyers, and alleged attorney malpractice does not usually provide a basis to set aside a judgment pursuant to Rule 60(b)(1)." *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004). While Mr. Westreich nobly requests that any penalties for his mistakes fall on him rather than his clients,[65] "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer Inv. Servs. Co.*, 507 U.S. at 396. Mr. Westreich's failure to apply the *Foman* factors correctly, to respond adequately to Defendants' opposition thereto, or to supply additional evidence to the Court that he had in his possession, do not merit a do-over. *See Solutions IV*, 2022 WL 3575308, at *4–*6.

Even if attorney error could be considered excusable neglect, the Court would, in its discretion, decline to grant relief from its prior order. Weighing the totality of the circumstances, awarding Boyd and Sarvey a fresh set of downs would be immensely prejudicial to Defendants, since Boyd and Sarvey's motivation behind a supplemental pleading was to add claims "which have arisen since the Fifth Amended and Second Supplemental Complaint." *Solutions IV*, 2022 WL 3575308, at *4 (quoting Plaintiffs' motion for leave). In other words, just as the then-11-year-old lawsuit was nearing resolution in 2022, Boyd and Sarvey said that they wanted to start afresh. The balance of equities did not motivate the Court to indulge that request in July, nor does it now.

At some point, every lawsuit must end. While Mr. Westreich's zeal and persistence are admirable, granting the Renewed Motion for Leave would only reward his sloppiness and would further protract this litigation. Boyd and Sarvey insist that they are "entitled to at least one opportunity to correct defects for which [Mr. Westreich] has received clear notice from the Court," but they already had that chance.[66] Boyd, Sarvey, and their counsel have had more than enough opportunities to plead their claims

---

[65]   Westreich Declaration ¶ 67.

[66]   Reply for Motion for Leave 5:22-23.

properly. The Renewed Motion for Leave to file eighth amended and third supplemental complaint is **DENIED**.

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1. Defendants' Motion to Dismiss is **GRANTED**, and the Seventh Amended Complaint is **DISMISSED without leave to amend**.

2. Defendants' request to strike portions of the Seventh Amended Complaint, presented in the alternative, is **DENIED as moot**.

3. Boyd and Sarvey's Renewed Motion for Leave is **DENIED**.

4. Boyd and Sarvey's Application to Reopen is **DENIED.**

5. Judgment shall issue accordingly.

**IT IS SO ORDERED.**

Dated:  March 13, 2023

John W. Holcomb
UNITED STATES DISTRICT JUDGE